**FILED**
July 06, 2021
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____ JU
                    DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| CODY LON SMITH,<br>TDCJ No. 02089602,<br><br>   Petitioner,<br><br>v.<br><br>BOBBY LUMPKIN,[1] Director,<br>Texas Department of Criminal Justice,<br>Correctional Institutions Division,<br><br>   Respondent. | §<br>§<br>§<br>§<br>§<br>§   CIVIL NO. SA-20-CA-0179-OLG<br>§<br>§<br>§<br>§<br>§<br>§ |

## MEMORANDUM OPINION AND ORDER

Before the Court are Petitioner Cody Lon Smith's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 and supplemental memorandum in support (ECF No. 1), as well as Respondent Bobby Lumpkin's Answer (ECF No. 10) thereto. Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

### I. Background

In June 2016, a Kerr County jury found Petitioner guilty of aggravated assault with a deadly weapon as charged in the amended indictment. *State v. Smith*, No. B15-631 (198th Dist. Ct., Kerr Cnty., Tex. June 9, 2016) (ECF No. 11-20 at 94, 173-74). Petitioner originally elected to be sentenced by the jury as well but changed this election after he was found guilty. (ECF Nos. 11-20 at 142; 11-34 at 177-80). Following the conclusion of a pre-sentence investigation

---

[1] The previous named Respondent in this action was Lorie Davis. On August 10, 2020, Bobby Lumpkin succeeded Davis as Director of the Texas Department of Criminal Justice, Correctional Institutions Division. Under Rule 25(d) of the Federal Rules of Civil Procedure, Lumpkin is automatically substituted as a party.

and separate punishment hearing, the trial court sentenced Petitioner to fifty years of imprisonment. (ECF Nos. 11-20 at 271-72; 11-36 at 26).

The Texas Fourth Court of Appeals affirmed Petitioner's conviction and sentence in an unpublished opinion on direct appeal. *Smith v. State*, Nos. 04-16-00630-CR and 04-16-00631-CR (Tex. App.─San Antonio, Feb. 27, 2019, pet. ref'd); (ECF No. 11-23). The Texas Court of Criminal Appeals then refused his petition for discretionary review on June 19, 2019. *Smith v. State*, Nos. 0318-19 and 0319-19 (Tex. Crim. App.). A few months later, Petitioner filed a state habeas corpus application challenging the constitutionality of his state court conviction, but the Texas Court of Criminal Appeals denied the application without written order on November 13, 2019, based on the findings of the trial court. *Ex parte Smith*, No. 87,797-02 (Tex. Crim. App.); (ECF Nos. 11-47; 11-48 at 17).

Petitioner initiated the instant proceedings by filing a petition for federal habeas relief on February 13, 2020. (ECF No. 1). In the petition and supplemental memorandum filed with it, Petitioner raises the same two allegations that were rejected by the Texas Court of Criminal Appeals during his state habeas proceedings: (1) his trial counsel rendered ineffective assistance by incorrectly advising him that he could receive probation if he elected to be sentenced by the trial court instead of the jury, and (2) trial counsel rendered ineffective assistance by failing to object to the amended indictment prior to the first day of trial.

## II. **Standard of Review**

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. 28 U.S.C.A. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

### III. Merits Analysis

Petitioner alleges he was denied the right to effective assistance of counsel by his trial counsels' misleading advice on his eligibility for probation and by counsels' failure to raise a timely objection to the amended indictment. Both allegations were raised during Petitioner's state habeas proceedings and rejected by the Texas Court of Criminal Appeals. As discussed below, Petitioner fails to demonstrate the state habeas court's rejection of these allegations was either contrary to, or an unreasonable application of, Supreme Court precedent.

**A.   The *Strickland* Standard**

Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel (IATC claims) are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense. 466 U.S. at 687-88, 690. According to the Supreme Court, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the

"likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Finally, IATC claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated the IATC claims on the merits, a court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *See Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)); *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standards," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101. That is to say, the question to be asked in this case is not whether counsel's actions were reasonable, but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. at 105.

**B.** **Eligibility for Probation (Claim 1)**

Petitioner first contends his trial counsel, Mr. Clay Steadman and Mr. Steve Pickell, rendered ineffective assistance by erroneously advising Petitioner that he could receive probation if he elected to be sentenced by the trial court instead of the jury. According to Petitioner, he relied on this advice when he opted to be sentenced by the trial court, which deprived him of the right to seek a probated sentence from the jury.

1. Relevant Facts

Prior to trial, Petitioner originally elected to have the jury assess the punishment. (ECF No. 11-20 at 142). Following the jury's guilty verdict, however, trial counsel informed the trial

5

court that Petitioner wished to change this election so that the trial court assessed punishment. (ECF No. 11-34 at 177). The following discussion between Petitioner and his counsel then took place on the record:

> [COUNSEL]: [Petitioner], in private you and I talked about it a little bit before the trial started while we were in private in conference, I told you that I would seek—if you wanted me to, we would seek the permission of the State to change your election and go to the Court rather than the jury for punishment. Do you recall that conversation?
>
> [PETITIONER]: Yes, sir.
>
> [COUNSEL]: Did I answer any and all questions you had?
>
> [PETITIONER]: Yes, sir.
>
> [COUNSEL]: And were you satisfied with that answer that I gave you?
>
> [PETITIONER]: Yes, sir.
>
> [COUNSEL]: And I told you that there was no way of knowing what a jury would do, no way of knowing what the Court would do, because it hasn't heard any additional punishment evidence. You understand that?
>
> [PETITIONER]: Yes.
>
> [COUNSEL]: And I explained to you the process by which that would happen if you went to the Court, correct?
>
> [PETITIONER]: Yes, sir.
>
> [COUNSEL]: Based on knowing all those alternatives and based on knowing that you know you are subject to the full range of punishment, first degree felony, which is five years in prison up to life or, you know, *even probation*, I mean, you understand that you are subject to that full range of punishment if you were to go to the Judge?
>
> [PETITIONER]: Yes, sir.
>
> THE COURT: And based upon that information that I have discussed with you, is it your desire at this time to inform the Court that you want to change your election and go to the Court for punishment?

| | | |
|---|---|---|
| [PETITIONER]: | Yes, sir. | |
| [COUNSEL]: | Is that a freely and voluntarily made decision? | |
| [PETITIONER]: | Yes, sir. | |
| [COUNSEL]: | I didn't say you had to do it? I told you we would do whatever you would like to do; is that correct? | |
| [PETITIONER]: | Yes. | |
| [COUNSEL]: | Okay. Based on that—based on my client's request, Your Honor, we would ask that the State consent—if the State will agree and consent, then we will proceed to the Court for punishment. | |

(ECF No. 11-34 at 177-79) (emphasis added). The trial court then allowed the prosecutor for the State, Mr. Scott Monroe, to ask Petitioner a few questions regarding the change in election:

| | | |
|---|---|---|
| MR. MONROE: | [Petitioner], I don't want to know what all y'all talked about. I am not entitled to know that, but I want to make sure that you feel Mr. Steadman fully explained all of your rights. | |
| [PETITIONER]: | Yes, sir. | |
| MR. MONROE: | And you believe you understand them? | |
| [PETITIONER]: | Yes, sir. | |
| MR. MONROE: | And you are satisfied that he and Mr. Pickell have represented your interests and that all the decisions you have made, including this one, are eyes wide open, you understand everything you are doing? | |
| [PETITIONER]: | Of course. | |

*Id*. at 178-80. Based on these responses, the State did not object to Petitioner changing the election and a new punishment hearing before the trial court was scheduled for a later date.

2. Analysis under *Strickland*

Petitioner contends trial counsel rendered ineffective assistance by incorrectly advising him that the trial court had the option of sentencing him to probation. Under Texas law, a judge

7

may not grant probation to a defendant if there is a deadly weapon finding. *See* Tex. Code. Crim. Proc. Art. 42A.054(b). There was such a finding in this case. (ECF No. 11-20 at 174). As such, Petitioner argues that his election decision was based on erroneous information given by counsel both before he changed his election and during the conversation with counsel that was on the record. According to Petitioner, he would have opted for the jury to assess punishment had counsel correctly advised him.

Petitioner raised this exact allegation during his state habeas proceedings. In response, both trial counsel submitted affidavits stating they did not advise Petitioner that the trial court could consider a probated sentence if he changed his sentencing election, but that their advice to change the election was strategic based on a number of other factors. (ECF No. 11-48 at 109-18). Relying on counsels' affidavits, the state habeas trial court issued these findings:

1. [Petitioner] elected to have the jury assess punishment.

2. Jury Trial began on June 7, 2016, with the Court carrying the B07-57 Motion to Proceed through Trial thereby also utilizing the evidence presented at Trial to rule on the Motion to Proceed.

3. Jury returned a guilty verdict on June 9, 2016.

4. On June 9, 2016, after the guilty verdict was returned, [Petitioner] and his two defense attorneys privately conferred.

5. Defense counsel discussed State's notice of intent to use bad acts and extraneous offenses.

6. State's extraneous notice was extensive and included numerous allegations of violent and assaultive behavior against multiple women, including the victim of the case on trial.

7. [Petitioner] indicated to his counsel that he did not want to testify.

8. The State, through discovery, provided multiple electronic recordings of [Petitioner] and victim fighting including alleged threats to the victim and discussion of a prior stabbing.

9. Said electronic recordings would have undermined the Defense strategy presented at trial.

10. The Trial Court, outside the presence of the Jury, entered a finding in Cause No. B07-57 Motion to Proceed of true on the lesser included offense of Criminal Negligent Homicide.

11. Defense counsel informed [Petitioner] that he could present evidence without testifying through a pre-sentence investigation, if he elected to change his sentencing election to the Judge.

12. Defense counsel, in private conference with [Petitioner], did not discuss any probation eligibility.

13. [Petitioner], taking into consideration the extraneous notice, his desire to not testify, his desire to avoid cross examination, his ability to provide evidence, the possibility of avoiding the electronic recordings, his ability to preserve Appellate issues, and the Court's lesser included finding in the Motion to Proceed, made a strategic decision with his two Defense attorneys to change his election for sentencing from Jury to Judge. This decision was made in private conference <u>prior to</u> entering the courtroom and seeking a change.

14. [Petitioner]'s decision to change his sentencing election was made <u>prior to</u> Mr. Steadman's inadvertent probation statement to the Court.

15. [Petitioner], in open Court, was asked "And based upon the information that I have discussed with you (in private), is it your desire at this time to inform the Court that you want to change your election and go to the Court for punishment? . . . Yes, Sir."

16. The State did not object.

17. [Petitioner], through the PSI was able to refute multiple extraneous issues and was able to present a thorough sentencing defense.

(ECF No. 11-48 at 157-58). The court then concluded counsel were not deficient because: (1) Petitioner made a strategic decision to change his sentencing election, (2) counsel did not make any probation representations during the private discussion of sentencing strategy, (3) there was no credible evidence that Petitioner relied on counsel's inadvertent statement to the trial court that he could be sentenced to probation by the trial court, and (4) there was credible

9

evidence that Petitioner relied on the private communications with counsel to make his decision. *Id.* at 158-59. The Texas Court of Criminal Appeals adopted the trial court's findings when it denied relief without written order. (ECF No. 11-47).

Petitioner fails to show that the state court's ruling was contrary to, or involved an unreasonable application of, federal law, or that it was an unreasonable determination of the facts based on the evidence in the record. The trial court's findings—based on the affidavits given by trial counsel—explain that Petitioner's decision to change his punishment election was not based on any alleged misrepresentations made by counsel regarding probation eligibility, but was rather a strategic decision based on numerous other factors made after thoroughly discussing the matter with counsel. Petitioner has not shown that this determination "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Consequently, viewing the allegations under the "doubly" deferential review encompassed by *Strickland* and the AEDPA, Petitioner's claim cannot survive. *See Richter*, 562 U.S at 105.

C. **Amended Indictment** (Claim 2)

Petitioner next contends that his trial counsel were ineffective for failing to object to the amended indictment prior to the beginning of trial. According to Petitioner, the amended indictment did not sufficiently allege acts that would have constituted recklessness under Article 21.15 of the Texas Code of Criminal Procedure. By failing to properly object to the amended indictment, Petitioner argues, counsel failed to preserve error and allowed the State to proceed on a fundamentally defective indictment.

Petitioner raised this allegation during his state habeas proceedings. In recommending the denial of Petitioner's application, the state habeas trial court made the following findings:

10

1. On November 23, 2015 [Petitioner] was indicted.

2. On March 7, 2016 [Petitioner] filed a Motion to Quash and Exception to the Indictment.

3. On March 11, 2016 the Trial Court granted the Motion.

4. On March 17, 2016 the State moved to amend the indictment.

5. On March 21, 2016 [Petitioner]'s attorney objected to the amended indictment with State's Motion.

6. The Trial Court overruled [Petitioner]'s objection.

7. On June 7, 2019 in open court and outside the presence of the Jury, [Petitioner] renewed his objection to the amended indictment. The Trial Court granted a running objection to the amended indictment through trial.

(ECF No. 11-48 at 156). The court then concluded that trial counsels' performance was not deficient because counsel "timely objected to the State's amendment and preserved said objection through trial." *Id*. at 158. These findings and conclusions were then adopted by the Texas Court of Criminal Appeals. (ECF No. 11-47).

Contrary to Petitioner's assertions, the record supports the trial court's findings and conclusions. Prior to trial, Petitioner filed a motion to quash the original indictment, arguing the indictment failed to allege the act or acts relied upon to constitute recklessness as required by Article 21.15 of the Texas Code of Criminal Procedure. (ECF No. 11-20 at 69-72). The trial court granted this motion on March 11, 2016. *Id*. at 87-88. Thereafter, the State moved to amend the indictment to allege the act or acts relied upon to constitute recklessness. *Id*. at 91-92. At a pretrial hearing on March 21, 2016, counsel renewed his original objection that the amended indictment still did not properly plead recklessness pursuant to Article 21.15. (ECF No. 11-48 at 134-41). The trial court overruled counsel's motion and amended the indictment the next day. (ECF No. 11-20 at 94). Counsel renewed his objection just prior to trial on June 6, 2016, and

11

was granted a running objection by the trial court. (ECF No. 11-33 at 11-12) (stating the objection to the amended indictment is based on "the manner and method in which it was pled as to the definition and specifications of reckless conduct").

As the record demonstrates, Petitioner's trial counsel cannot reasonably be faulted for failing to object to the amended indictment filed in this case. To the extent Petitioner contends counsel should have objected further, counsel cannot be considered deficient or prejudicial for failing to raise a futile or non-meritorious argument. *See Miller v. Thaler*, 714 F.3d 897, 904 n.6 (5th Cir. 2013) (counsel is not required to make futile motions or objections); *Roberts v. Thaler*, 681 F.3d 597, 612 (5th Cir. 2012) ("the failure to lodge futile objections does not qualify as ineffective assistance") (quoting *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)). Petitioner therefore fails to show that the state court's ruling was either contrary to, or involved an unreasonable application of *Strickland* or an unreasonable determination of the facts based on the evidence in the record.

### IV. Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a

different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief. As such, a COA will not issue.

## V. Conclusion and Order

Petitioner has failed to establish that the state court's rejection of the aforementioned claims on the merits during his state habeas corpus proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the petitioner's state trial, appellate, and habeas corpus proceedings. As a result, Petitioner's federal habeas corpus petition does not warrant federal habeas corpus relief.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Federal habeas corpus relief is **DENIED** and Petitioner Cody Lon Smith's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2. No Certificate of Appealability shall issue in this case; and

3. All remaining motions, if any, are **DENIED**, and this case is now **CLOSED**.

**SIGNED** this the ___6th___ day of July, 2021.

**ORLANDO L. GARCIA**
**Chief United States District Judge**